UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON BIT LABS, INC., d/b/a BIT BAR SALEM, a Massachusetts corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CHARLES D. BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,<br><br>    Defendant. | Civil Action No. _____<br><br>**COMPLAINT** |

This is a Civil Action brought by Plaintiff Boston Bit Labs, Inc., d/b/a Bit Bar Salem ("Bit Bar" or "Plaintiff") against Defendant Charles D. Baker, in his official capacity as the Governor of the Commonwealth of Massachusetts ("Defendant" or "Gov. Baker"). Plaintiff operates a gaming arcade in Salem, Massachusetts. On March 23, 2020, Gov. Baker shut down a substantial part of Plaintiff's business due to the COVID-19 outbreak. Bit Bar brings claims under 42 U.S.C. § 1983 for Defendant's violation of Bit Bar's First and Fourteenth Amendment rights, and alleges as follows:

1. "Like the protected books, plays, and movies that preceded them, video games communicate ideas — and even social messages — through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world). That suffices to confer First Amendment protection." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011).

2. At Bit Bar, video games are presented in a stand-up kiosk-like format as well as tabletop formats.

3. In Massachusetts' casinos, gambling services are provided in kiosk like machines, which are functionally no different from video game machines.

4. The Commonwealth of Massachusetts, however, treats one sort of content different than the other. Casinos are allowed to be open and operate, but video arcades that do not provide gambling services, are not.

5. On May 18, 2020, Gov. Baker instituted a planned phased reopening of Massachusetts. In an order of June 1, 2020, Plaintiff's business was categorized as part of the Phase III enterprises. Gov. Baker reiterated that arcades would be part of Phase III in an order of June 6, 2020.

6. Suddenly, and without warning, explanation, or due process, on July 2, 2020, Gov. Baker ordered that Phase III enterprises may reopen beginning July 1, 2020, but shunted arcades to Phase IV. Casinos, however, were permitted to remain in Phase III. Thus:

 

7. Both casinos and arcades require people sitting or standing at similarly-sized machines. There is no difference in the COVID risks for customers or employees. As a result, Bit Bar has had to keep the arcade portion of its business closed (its restaurant is open under Phase 3) while casinos enjoy the advantage of the house always winning.

### THE PARTIES

8. Plaintiff, Boston Bit Labs, Inc. d/b/a Bit Bar Salem, is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business in Salem, Massachusetts.

9. The Defendant, Charles D. Baker, is the Governor of the Commonwealth of Massachusetts and is sued in his official capacity.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution. Personal jurisdiction and venue should be obvious.

## FACTUAL BACKGROUND

11. On or about March 10, 2020, Gov. Baker declared a state of emergency in the Commonwealth of Massachusetts due to the outbreak of the 2019 novel Coronavirus ("COVID" or "COVID-19"). *See* Massachusetts Executive Order No. 591.

12. The state of emergency continues to exist and, pursuant to Executive Order No. 591, involving the authority of Sections 5, 6, 7, 8 & 8A of Chapter 639 of the Acts of 1950, Gov. Baker has issued and continues to issue a series of further orders under the nomenclature of "COVID-19 Order."

13. On March 3, 2020, Gov. Baker issued COVID-19 Order No. 13 shutting down most brick-and-mortar businesses in Massachusetts as "non-essential," allowing Plaintiff's business only to provide takeout food services.

14. Pursuant to COVID-19 Order No. 19, the Department of Public Health is charged with enforcing the shut-down of Plaintiff's business pursuant to Mass.Gen.Laws, ch. 111, § 30.

15. The shut-down was extended on March 31, April 28, and May 15, 2020 by COVID-19 Orders No. 21, 30, and 32, respectively.

16. On May 18, 2020, Gov. Baker instituted a planned phased reopening process. *See* COVID-19 Order No. 33.

17. COVID-19 Order No. 33 permitted certain types of businesses to reopen on May 18 & 25, 2020, with all other previously-closed businesses remaining closed.

18. On June 1, 2020, Gov. Baker issued COVID-19 Order No. 35 identifying certain businesses as "Phase II" businesses and permitting them to begin preparing to reopen, including restaurants and retail stores.

19. COVID-19 Order No. 35 also identified business sectors that would be reopened as part of the eventual Phases III & IV. Plaintiff's business, like casinos, museums, fitness centers, and performance halls, was categorized as part of the Phase III enterprises.

20. Gov. Baker reiterated that arcades would be part of Phase III in an order of June 6, 2020. *See* COVID-19 Order No. 37.

21. By order of July 2, 2020, Phase III businesses were permitted to reopen beginning July 6, 2020. *See* COVID-19 Order No. 43.

22. Without warning, explanation, or due process, in COVID-19 Order No. 43 Gov. Baker recategorized arcades as a Phase IV enterprise along with ball-pits, hot tubs, steam rooms, and dance clubs for 2020, while recategorizing theaters, concert halls, ballrooms, laser tag arenas, and private-party rooms as Phase III.

23. According to Dr. Cassandra Pierre, an infectious disease specialist, the movement of arcades to Phase IV is "arbitrary."[1] Though Dr. Pierre notes that "[t]hey are high touch surfaces" and "[m]any people are potentially using the levers and joysticks and different pieces of machinery or the screens themselves," this is the same concern for users of slot machines and other casino gaming equipment.

24. Explanations for the movement of arcades from Phase III to Phase IV provided to Plaintiff from government officials have shifted from alleged determinations based on "input from public health experts" that fails to explain why casinos can open, but not arcades, to not wanting to "overwhelm local health departments," which makes little sense where the restaurant part of Plaintiff's business can open, but not the arcade, and all businesses otherwise need to draft and self-certify a COVID-19 Control Plan.

25. The absurdity of Gov. Baker's COVID-19 Orders is especially apparent when considering video game machines at Bit Bar that are not in the traditional stand-up kiosk configuration.

---

[1] *See* https://www.nbcboston.com/news/coronavirus/i-dont-see-it-ending-well-arcades-struggling-to-survive-amid-pandemic-closures/2171296/.

Bit Bar has video game machines that can be used as dining tables. While they are powered off, Bit Bar may allow customers to dine on them without issue. Their accepted use looks like this:

 

26. However, as soon as they are turned on, the tables, according to Gov. Baker's Orders, turn into deadly disease vectors from which customers must be protected. This is what they look like in their "dangerous" state:



27. Explanations for Gov. Baker's shifting justifications are hard to come by. Perhaps Gov. Baker prefers slot machines to QBert, or perhaps casinos write bigger campaign contribution checks

Case 1:20-cv-11641   Document 1   Filed 09/02/20   Page 6 of 8

than arcades do, and nobody really cares about small businesses until they make a federal lawsuit out of their stupidity, or perhaps there is someone in the Baker administration who still subscribes to the "moral panic" surrounding video games. *See, generally*, Children of the '80s Never Fear: Video Games Did Not Ruin Your Life, Smithsonian Magazine, May 25, 2017.[2] The only explanation that does not make sense is any claim to the restriction being necessary to protect the public.

## CAUSES OF ACTION

### *Count I*
### (42 U.S.C. 1983 – First Amendment)

28. Plaintiff hereby repeats and realleges the preceding paragraphs of the Complaint as if set out in full herein.

29. By reason of the aforementioned speech restriction, including COVID-19 Order No. 43, created, adopted, and enforced under color of state law, Defendant has deprived Plaintiff of its right to engage in protected speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

30. There is no compelling government interest to restrict the availability of video games when casinos are permitted to operate in analogous physical circumstances.

31. The only difference between a video poker kiosk and a video game kiosk is the content of the expression in the video game console.

32. Defendant's restriction on Plaintiff's speech, namely prohibiting the operation of the arcades where the kiosks provide game related content rather than gambling related content, is content-based and is in violation of the Free Speech Clause of the First Amendment.

33. As a direct and proximate result of Defendant's violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered irreparable harm, including the loss of its constitutional rights, entitling Plaintiff to declaratory and injunctive relief.

---

[2] Available at https://www.smithsonianmag.com/history/children-80s-never-fear-video-games-did-not-ruin-your-life-180963452/

Complaint

## *Count II*
### (42 U.S.C. 1983 – Fourteenth Amendment)

34. Plaintiff hereby repeats and realleges the preceding paragraphs of the Complaint as if set out in full herein.

35. By reason of the aforementioned speech restriction, including COVID-19 Order No. 43, created, adopted, and enforced under color of state law, Defendant has deprived Plaintiff of the equal protection of law guaranteed under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, in that Defendant is preventing Plaintiff from expressing its messages based on their content and viewpoint, thereby denying it the operation of an enterprise, in direct contrast to similarly situated enterprises such as casinos, which enjoy benefits of operation under law denied to Plaintiff and its enterprise.

36. As a direct and proximate result of Defendant's violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered irreparable harm, including the loss of its constitutional rights, entitling Plaintiff to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A. To declare that defendant's restriction on Plaintiff's speech, including the adoption of the orders at issue here, violates the First and Fourteenth Amendments to the U.S. Constitution as set forth in this Complaint;

B. To preliminarily and permanently enjoin Defendant's restriction and its application to Plaintiff's speech and business as set forth in this Complaint;

C. To award Plaintiff damages for the past loss of its constitutional rights;

D. To award Plaintiff damages for the arbitrary and capricious damage to its business;

E. To award Plaintiff its reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

F. To award such other relief as this Honorable Court may deem just and proper.

Dated: September 02, 2020

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Attorneys for Plaintiff
Boston Bit Labs, Inc.